The final argued case is Nino versus Joy Exchange. Three minutes, four minutes, three and a half minutes. You are very precise. Why not three minutes and 17 seconds? Three minutes and 28 seconds. I have a question. Well, if you're listening to Ms. Bradley, Ms. Griffiths, your client's probably in pretty deep water. Okay. There are three issues that you brought to the report. I'm sorry, say that again. The primary intent to arbitrate was to say that again, please. Okay, okay. No, I know that's the language that we used, and Judge Aldersert has this metaphor with the healthy, not cutting down the tree just because some of the branches are sick. But it seems to me that I don't know how helpful that is because in every one of these cases, you can always say the underlying purpose of the arbitration procedure is to resolve disputes, and otherwise you wouldn't have an arbitration dispute. I don't know where that gets us. It seems to me we've got to go further than that and maybe this is what you're suggesting, see whether or not the kinds of things written into the arbitration procedure, evidence and intent to use the dispute resolution mechanism to give a benefit to one side, as opposed to just looking at whether or not the intended dispute resolution mechanism, they always will. I'm not sure that gets us very far. So, I just know that they will, I just know that we expect that there's arbitration set up so many roadblocks that it's almost impossible to ever get any form of arbitration or a decision. So it seems like there is no attempt at arbitration, it's just a stonewall, it's a 12-year resolution and a remedy. And I think that's what we have in this case. I think we have two unconscionable submissions, possibly three, but the defendants said, oh, well, we have a sense to arbitrate and the court decided, okay, fine. And there's no evidence or no requirement that the defendant established that, well, the bail and remission terms are fair or not. You have to prove procedural unconscionability. But, yeah, Mr. Nino here is a college-educated individual who presumably can read the contract and assent to it. Yes, the procedural unconscionability is no bargaining power. You didn't answer that question. The question was, you assume that your client is someone with the kind of education we don't always see in these cases, could have read the agreement and consented to it. We didn't appeal to the court's right not to do more. However, we agreed with what this report says. And, you know, he prepared me for this. I was determined. And the concluded procedure, we made it difficult for the defendants to figure out their arbitration. We still, you know, we have an employment contract, we have a handbook, and we have an agenda. So I don't think it's very clear at all whether Mr. Nino or Mr. Nino was given the opportunity to review any of the documents. So the one thing he did sign had an arbitration clause written into it. Right. If the employment agreement had an arbitration clause written into it, it incorporated the document of action procedure clause into the employee's handbook. And then there was an agenda also. And all three documents refer to agreement processes or arbitration processes. So... That's the clause that you say set up a number of impediments to really getting to arbitration. I think... In other words, the time factors involved, from the five days to filing a grievance. The time factors were... It wasn't just that it was five days, it had to be those, and then it became two days. But then it bounced back and forth. You know, you have two days to do, to get those. Then you have five days to object. Then you have two days to do something else. But that's on both sides. I mean, the time restraints here seem to me to be unreasonably stringent. But they're unreasonably stringent on both sides. The employer also has these ridiculously tight time frames to respond to certain things during the process. Don't they have, like, five days, or possibly even two, to respond to an appeal or decision? I see. They might even be hoping not to respond. If they like the last decision, they can say, I'm not going to bother with it. There's some discovery in these cases. You got through 15, 15 months of discovery. Did you ever ask the DI whether they had arbitrated any cases? I mean, you say these, it was, the requirements were set up as roadblocks or impediments. Well, the way we dealt with that in the case, Your Honor, is to include the accomplishments of agency members. So, if I take you, if you ever have an acquittal, my question is, is that a negative? Because the terms are not negotiable. The time to do an acquittal is not negotiable. So you put it in the parties' hands, or then decide, okay, are these terms impossible? Give us the opportunity to withdraw them. What were the aspects of the agreement that were substantive and unconscionable? The time periods and the attorney fee requirements? Well, the court found the time period to be five days. We didn't know the period, except we did know the time period was unconscionable. And the requirements of the court were very long. How about the selection of arbitrators? It never came up. So you agree with the district court's decision on both of those aspects of unconscionability. Yes. What you disagree with is the severance. Okay. And our position is trying to get a team severance by doing nothing, except saying, gee, I need an arbitrator. You know what I mean? So you can get a couple more days there, lose the balance of the remaining terms of this arbitration, and then do this over there. And all they're going to do is get on with the process. It never happens. It usually happens. Should we decide this on the basis of a waiver? And I'm sure Ms. Chung may not agree that there has been a waiver. Assume that there was a waiver by the pretty extensive litigation that was entered into before the motion to compel was filed. Why shouldn't we just decide that whatever the merits of this arbitration clause, arbitration was waived because the employer who engaged in this protracted litigation without saying to the district court, this case belongs in arbitration, we shouldn't be in court, until 15 or 16 months have passed. I think waiver is the easiest thing to do in court. It was discussed in a different way. You know, under the hospital statute, you can go to court and say, well, you agree or not to talk to us. However, I think if you have on due course, you kind of have to come forward and be able to try to find out, so I would say that it encourages the staff to do something before the court of trial to find out, you know, drag it out, it looks good for us to do this, and we'll go ahead. If it doesn't, then we'll switch off and have the arbitration process. It encourages resolution, you might say, and draws it out. We don't find a way that encourages it. No, I think waiver is an easier question to do in court to decide, but I think the impact of calling for arbitration and a severance issue is probably more difficult than it is wanting to adopt it as a standard. I like this about waiver, but going back to severance, why do you disagree with severance? Because of the fees.  Pardon me? Actually, I shouldn't have to explain and show that severance is inappropriate. It's their word to show that as a party urging the enforcement of the demeaning terms of the contract to establish that severance is appropriate. But I'm asking you, why is severance inappropriate? And this is a similar question. Why did the district court make a mistake? You didn't say that this whole arbitration agreement was designed to favor Diamond International, that it's heavy-handed, et cetera, and therefore severance is inappropriate. So you weren't prepared to address it. All right, going back to waiver. Four depositions and ten pretrial conferences? Fifteen months? But you knew that arbitration was in the mix, right? And they denied it, so it's not a possible answer. The plaintiffs have no choice but to litigation. So that's what we did. And in fact, that's when the case was dismissed. That's when the case was dismissed. Is that right? Pardon? It was within a week of being dismissed. And we did two separate discoveries. Because the arbitration agreement provides for the rules of discovery to be used in arbitration, so that work was not wasted in a sense. That was work that you could bring into the arbitration process, isn't it? You might have mentioned, I'm sorry, and I might have missed it just a moment ago, but how close were you to a trial? Do you have any idea? Is it a consequence that there were no dispositive motions filed in the case? I think the final definition of dispositive is that a potential person on the right was disrespected by the author of the rule of law in 1912. There was no dispositive. It was somewhat confusing. I agree. The opposition to the rule of law was underrated, because there was nothing under the rule of law. And of course, there was an opinion on that, and there was no problem with the rule of law. I don't know. Can we go back to the wait? Finish your answer. Go ahead. You're up for a second. I mean, I would like to touch on the six practices on the way back. We can answer the answer. We'll want you to answer the question without getting into an entire analysis of all the six practices. There was dispositive motions filed, and we've already discovered that there was extensive discovery. There was – well – I guess prejudice is an overarching element. Prejudice is very important. But, of course, we've touched on the way back. But delaying things for a long time to subject a party to motion practice, to subject the party to – Well, pardon, but it's kind of like so what? I mean, was there a great expense of court time? Was Plaintiff required to expend much more than he would have expended had he gone directly to arbitration? How were you hurt by the very, very late application for arbitration? I understand what happened, but so what? I'm sorry to put it that way, but how were you prejudiced by the delays? Was it just delay that affected your case somehow? Well, I think it was the delay and a lot more – there was a lot more responsibility for our party to subject the party to action once that started. Because the arbitrators have to be bold. You have to educate them about it. That is a big matter, but they don't become the arbitrators all the time. That was the issue. While Plaintiff provided his discovery, did he provide his discovery? Did he provide his discovery? Yeah, I'm just wondering about the importance of the place on period of time. The delay is six months or 18 months. What goes on between that period of time? I'm trying to think. I'm trying to think about it. It's what goes on. It's the delay. It's the delay. There are a lot of court problems. There are a lot of court problems. So I think that's very, very clear. Thank you. Thank you. The agreement is unconscionable. Why should it be enforced? Let's get to the second part of what you just said. Let's assume that Mr. Nino was the world's worst employee and that you had every right in the world to fire him. I'm not saying that's true. Let's just assume all that. The case is really about the arbitration clause that's been written into this agreement and the issue of severability, and it's about waiver. And we were asking Ms. Griffiths just now about the protracted litigation. It does seem strange, doesn't it, to go through that kind of litigation, the pre-trial motions, the meetings with the judge, and then coming in 15 months afterwards to try to enforce an arbitration clause? I think it's because I'm familiar with the evidence process. It's kind of the same kind of thing that I'm familiar with. Okay, so I'll give you more than that. Let's assume that you fired him with cause, that you've maintained his clause. Let's assume that. It still doesn't resolve our issue. And you're right, it was the suspension, and that's what this grew out of. How about if you add the suspension? which seem to clearly favor the employer. Well, what about looking at it in terms of the intent? Because it seems to me that we can look at those things to get into whether or not the intent of this contract was to resolve disputes, or whether it was to create such an adverse form for the employee as to basically put the employer in a situation where the employee had no recourse, couldn't go to court because of the arbitration provision, and the arbitration provision is drafted in such a way that any employee in the right mind is going to be discouraged from resorting to it. If we look at it from that point of view, was the intent to arbitrate, which we kind of have to for the severability claim, why can't we look at everything not just the time and the loser pays? Well, but it's up to diamond exchange as to whether or not you use one of the other corporate officers or whether you bring them back to the place where the issue is brought to the arbitrator. Where? Well, after the arbitration. Right, but where do you bring that issue in front of the arbitrator? Let's say you want to have a hearing in front of the arbitrator. Where does that hearing occur if the employer decides to bring the person back to the job site? For the arbitration, you're going to have to have one arbitrator who is going to come to you, and you're going to have to have that person who is going to come to you and talk to you about the arbitration process and what you're going to have to do before the arbitration. Even though the agreement says place of employment? Yes. In Frillo, there was no severance clause in Frillo, was there? I think there was. There was, I think. Would that make a difference? No. In fact, Frillo sets forth two specific requirements for severance or no severance, and I wanted to ask you about one of those, which is in Frillo. The first one I'm not concerned about, but it's the second requirement to not sever. And it says, I want to quote the language, whether the number of such provisions, referring to the arbitration provisions, and the degree of unfairness support the inference that the employer was not seeking a bona fide mechanism of dispute resolution, but rather sought to impose a scheme that it knew or should have known would provide it an impermissible advantage. So if Ms. Griffiths is right that DI was seeking and in fact obtained an impermissible advantage in all of these provisions, now we've got to go back and look at the arbitration provisions, meaning the filing requirements, the attorney fee provision, now we can look at the arbitrator selection process and all of that. Was it designed to give DI an impermissible advantage? And if we say yes, the district court then was wrong, should not have severed. Could you respond to that? Yes. No, but we're going back to the actual arbitration agreement, the time that it was signed. Was it designed to give the employer an impermissible advantage? In other words, discourage arbitration, as I believe Ms. Griffiths said. Keep someone who is an employee from actually going through the arbitration process because you've got five days, you've got to hurry, and even if you can do that, you've got to get a lawyer and you may have to pay for the lawyer. Was this designed to give DI an impermissible advantage? I mean, on the face of it, it seems like it does, but you can tell me why I'm wrong. It says that the remedy selected by if the employer's action is affirmed, that the disciplinary action cannot be changed. Is that what it says? Because we actually have two cases very similar. One of them has been argued, and I might be confusing the arbitration clauses. I want to make sure that I've got the right one. In your case, it says that the arbitration, if it goes to arbitration, the arbitrator is not empowered to change the remedy of the employer if the employer's action is upheld. Well, under the law, anyhow. Did the district court discuss or provide a rationale for severability? Well, if that's true, you almost would never have severability, or you would never reject severability. You would just say arbitration is designed for a streamlined dispute resolution, therefore they go to arbitration. I mean, you agree with me that there are factors that should be considered when deciding whether to sever or not. Would you agree with me that the court did not discuss those factors? Well, you just said that the court said arbitration is a good thing, therefore it would lead to arbitration. Thank you. The clause I was thinking of, your provision does say the arbitrator must interpret, apply, and be bound by the employer's rules, regulations, policies, and procedures, and then it says as well as. And so I guess your argument is that as well as clause says what could otherwise be problematic for you, that you've got to comply with federal, state, and local law. So if the employer has some provision that women, for example, cannot wear head covering to work, if that's inconsistent with, I guess it's RFRA, Religious Freedom Employment Act, whatever that stands for, if that is found to discriminate against women who are Muslim, then that would be struck down, and this clause would not allow the arbitrator to employ that employer rule. Can I interrupt you because of the time? About waiver. Waiver. Well, so you've got this scenario of you've put it in your defense, I guess, arbitration. You put the fact that this case is arbitrable. You then engage in a process of discovery, and as I understand it, 10 pretrial conferences and orders were issued, and four depositions and a number of other perhaps interrogatories and this and that, and you're almost ready for trial, and then you say let's go to arbitration after 15 months. I mean, it seems if I were the plaintiff's lawyer, I'd be somewhat livid after spending all this time sort of like on a treadmill, and then money. Ms. Griffith didn't talk about money, but I think there's money involved when you do all these things, or maybe it's on a contingency basis, but then there's a lot of work and energy involved, and then all of a sudden at month 15 you say we should go to arbitration. Let's make a motion for arbitration. Isn't there an inherent unfairness in that such that waiver is appropriate? But why didn't you ask for it in month number one or month number two? You know, the impression I got was that it was discovered in month number 13. Look what we have here. We have an arbitration clause. Finally they had an associate rather than a partner read the agreement, and the associate realized, oh, there's an arbitration clause here. That's right. But in your conferences, didn't you tell the magistrate, we have an arbitration clause we're giving some thought to, and maybe we should apply for it to preserve our right and see what happens? Okay. And that's on the record? Because that would be it. Okay. I remember reading it somewhere. I guess it was in your brief. Okay. Okay. Okay. Let's reserve three minutes and 30 seconds. We'll hear your button. Okay. Okay. Okay. What about Ms. Chang's argument that the other things that you're raising here other than the fees and the time provision are really not before us? Because she didn't have a chance to respond to those in the district court. And you argued substantive as well as procedural? Did you argue substantive as well as procedural unconscionability? The district court decided this based upon procedural unconscionability. Did you argue both substantive and procedural unconscionability? Doesn't the Alexander case help you, which is a case that in fact considered matters not presented to the district court but because they were thoroughly discussed on appeal? Was it brought out at the district court level? Were there any constraints? Was it elaborated on the appeal on the court? I'm not conceding that it wasn't brought out. I'm saying all these factors, whether they're substantively unconscionable or not, were certainly unfair. And they never came forward with a saying that they showed no evidence that the agreement was fair or that it was enforceable. So all these factors can be looked at, whether they're not substantively unconscionable, they're unfair and unscinded, and in fact, it's dead and untimely. And I'd like to, I don't know how many more minutes I have left, but I do think that the last thing I was going to say was that in 2005, several of the five years, there's been a huge division. What do you want? Is there a resolution? Is there something that the government can't do? So, but I think definitely under the state law, there's a waiver. I think the fact that we take the position that they should be limited in any way, that's not correct, as far as I understand the implications of what goes on here in Kansas and how to deal with the circumstances in Kansas, if there's any kind of impact. Anyway, I would say anybody that's included ought to be able to come forward. Did the district court dismiss the case? Yes, it did. Well, if... Can you talk about Loy versus Ovenda just for a moment? I thought the case, if it goes to arbitration, I mean, if DI wins on arbitration, it goes to arbitration. So why was it dismissed? I believe it was dismissed. It was dismissed in fact on Loy versus Ovenda. That's a long period of time. But Ovenda prosecuted it. There's no dismissal. You know, it shouldn't stay. I mean, it's not an arbitration accusation, but we don't want to dismiss it. We just object to the actual litigation. So if Ms. Chung wins, then we have to reverse that. Yes, but... I know. I know what you mean. I think that Loy versus Ovenda Well, that's what I mean. If Ms. Chung wins her case and it has to go to arbitration, the dismissal has to be reversed back to the district court. Thank you. I think the matter is very important.